IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 24-15572 |
| REYNOSO VINEYARDS, INC. | ) | |
| | ) | Honorable Deborah L. Thorne |
| | ) | |
| Debtor. | ) | Courtroom 682 |

**DEBTOR'S RESPONSE IN OPPOSTION TO THE MOTION TO CONVERT
DEBTOR'S CHAPTER 11 TO CHAPTER 7 OR,
IN THE ALTERNATIVE, TO APPOINT A CHAPTER 11 TRUSTEE**

Reynoso Vineyards, Inc., debtor-in-possession ("RVI" or the "Debtor"), hereby responds to the Motion of Summit State Bank (the "Summit") to Convert the Debtor's Chapter 11 to Chapter 7 or, in the Alternative, to Appoint a Chapter 11 Trustee (the "Motion") [ECF No. 43].[1]

**I. BACKGROUND**

1.      On October 18, 2024 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"). The Debtor is operating its business and managing its property as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. The Debtor has substantially all the rights, powers, and responsibilities of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a).

---

[1]  Other creditors have filed joinders in the Motion but have not set forth any additional grounds.

2.  No creditors' committee has been appointed in the Debtor's chapter 11 case, and no trustee or examiner has been appointed.

3.  **The Vineyard**. The Debtor is a "farmer" whose primary asset is a 395-acre working vineyard that includes an estate residence, and several ancillary structures, located in the Alexander Valley wine region of Northern California (the "Vineyard"). The Debtor also uses certain equipment owned by itself or affiliates, in the operation of the Vineyard. The Debtor's business consists mainly of growing and selling grapes to affiliates or third parties that process the grapes into wine. The Debtor's principal Joesph Reynoso ("Reynoso") organized the Debtor in 1995 and the Debtor or a predecessor has owned the Vineyard and continuously operated the business over the last 30 years.

4.  Reynoso has invested his life savings in the Vineyard and has not drawn compensation from the business. The Vineyard has a current fair market value of between $22-24 million based on the analysis contained in the most recent formal appraisal prepared for Summit dated as of August 17, 2023.[2] A recent preliminary broker opinion of value suggests a value of $18-19 million but does not include a specific analysis for the value conclusion. As discussed below, there are significant intangible factors, including the possibility of granting conversation easements in return for cash payments and the subdivision of the Vineyard into multiple home sites, that exist, but are not reflected in the historic appraisals

---

[2] Summit advised the Debtor that it has received an updated appraisal that actually indicated an increase in value but has declined to share the appraisal with the Debtor.

2

5.     **Sugarloaf Winery**.   Reynoso owns an interest in Sugarloaf Winery, LLP ("Sugarloaf"), a commercial wine making operation and tasting room located on a 40-acre site in Santa Rosa, California.    Sugarloaf purchases from and processes grapes for the Debtor's affiliates and other independent growers and winemakers. Sugarloaf has a current fair market value of $20,840,000, consisting of real property of $18,500,000 and machinery and equipment $2,340,000, based on the analysis contained in the most recent formal appraisal prepared for Bank of the West, dated August 8, 2023. On November 1, 2024, Sugarloaf filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Northern District of California, Case No, 24-10673.  Sugarloaf is currently marketing its assets for sale and will either effect a sale or recapitalization in its bankruptcy proceeding. The concurrent sale of the Sugarloaf assets is critical to the interest of creditors in this case.

6.     **Agathon/Crescere**. Agathon Holding, LLC dba Crescere Wines ("Agathon/Crescere") is a limited liability company owned and managed by Reynoso. The Debtor transfers grapes to Agathon/Crescere and it arranges for the sale or processing of the grapes into bottled or bulk wine, usually by contracting with Sugarloaf.   Agathon/Crescere owns the Debtor approximately $1.4 million for grapes and has a current inventory of bottled and bulk wines with an estimated value of $500,000 to $1 million.  The realization on the wine inventory is directly impacted by the time and method of disposition. The wine inventory could be used

3

as currency to repay the amounts due the Debtor and would then be available to serve as tangible collateral for either DIP loans or cash collateral usage.

7.    **The 2025 Crop**.  The Debtor has had limited business activity since the filing of the case because like most agricultural operations grape growing is seasonal. During the California wine country "off season," activity is typically limited to maintenance and conservation efforts.  In March of 2025, the Debtor will need to begin the process of preparing the vines for "budding."  The Debtor labor and material needs over the 2025 will require the expenditure of approximately $75,000 monthly until the commencement of harvest in February of 2025. The cumulative expense of bringing the 2025 crop to harvest approximately $1.5 million.

8.    **The Vineyard and Sugarloaf Secured Debt Structure**. As reflected in the Schedules and the Motion, the Debtor's has four primary secured creditors:   (1) Summit Bank approximately $9.5 million secured by a first mortgage lien on Vineyard and a first priority security interest in the Debtor's personal property; (2) Poppy Bank approximately $14 million secured by a second mortgage lien on the Vineyard and a first mortgage lien and security interest in the Sugarloaf real and personal property; (3) Daubenspeck approximately $1.7 million as assignee of Metropolitan Bank secured by a third mortgage lien on the vineyard and (4) William Holtz Trust approximately $400,000 secured by a fourth mortgage lien on the Vineyard.

9.    In sum, the Debtor has approximately $25 million in secured claims that have claims against estate property with an estimated value of $18-24 million

and non-estate property with an estimated value of $20 million, or a total asset value of $38-44 million. Thus, even if the Court were to substantially discount the bank appraisals, there is a substantial equity cushion that if the Debtor and Sugarloaf assets are sold in a commercially reasonable manner should generate sufficient proceeds to pay all secured in full including interest and fees and likewise pay unsecured creditors. Conversely, as described below because of the Poppy Bank "problem," a trustee sale of the Vineyard could leave with no cash for subordinated and unsecured creditors.

10. **The Poppy Bank Problem**. The Debtor executed a guarantee of Sugarloaf's indebtedness to Poppy Bank secured by a second mortgage lien on the Vineyard. As a result, Poppy Bank may have a claim to all excess proceeds from the sale of the Vineyard in excess of the Summit Bank debt. A sale of the Vineyard before the sale of the Sugarloaf assets could leave all subordinated and unsecured creditors of the Debtor with no cash and the Debtor only the possibility of asserting a reimbursement or subrogation claim against Sugarloaf. Thus, a pragmatic approach to the Debtor's sale of its assets requires substantial coordination of the Debtor and Sugarloaf sale process.

11. **The Conservation Easement**. In April of 2024, the Debtor and the Sonoma Count Open Space District ("District") were engaged in negotiations related to the grant of what is essentially a conversation easement that would exchange a cash payment in the $6-11 million for an agreement to limit future development of the Vineyard. Shortly before Summit's notice of sale, the District advised that it

5

would provide a letter of intent. As result of the Chapter 11 filing, the District has advised Although such an agreement cannot be formalized prior to the date of an anticipated sale, the existence of the program is a substantial value enhancer.

12. **The Debtor's Efforts to Mitigate Deficiencies in Case Management and Move the Case toward Successful Resolution.** The Debtor has recently retained experienced bankruptcy counsel and is currently interviewing several other bankruptcy professionals, including accountants and a broker/investment advisor to effectuate the sale of recapitalization of the Debtor and Sugarloaf. The deficiencies in case management and compliance with reporting requirements while real are not particularly significant in the context of the Debtor's operations and are easily correctable. The Debtor has engaged with the creditor body and is committed to proceeding expeditiously with a sale or recapitalization.

13. Summit Bank's grounds for dismissal or conversion are not sufficient, particularly given the short duration of the case and their relative insignificance to the real issues facing the estate. The Debtor commitment to a consensual disposition process is likely to result in the best result for creditors in a challenging environment.

## II. ARGUMENT

**A. NO CAUSE EXISTS TO CONVERT THE CHAPTER 11 CASE TO CHAPTER 7.**

14. The Motion should be denied because no cause exists to convert the case to Chapter 7 pursuant to 11 U.S.C. § 1112(b), and conversion would not be in the best interests of creditors or the estate. "The party seeking conversion bears the

6

initial burden of proving that cause exists by a preponderance of the evidence." *In re Ryan 1000, LLC*, No. 21-21326-beh & 21-21327-beh, 2021 Bankr. LEXIS 1776, at *37 (Bankr. E.D. Wis. July 2, 2021). "Conversion or dismissal of a Chapter 11 case is a drastic measure, and the burden is on the movant to prove the relief requested is warranted and not premature." *In re Dark Horse Tavern*, 189 B.R. 576, 580 (Bankr. N.D.N.Y. 1995) (movant failed to establish cause for dismissal or conversion). The harshness of conversion or dismissal mandates that it result only upon a strong evidentiary showing. *Id.*

15. First there has been no substantial or continuing loss to or diminution of the estate.  The Vineyard is in is dormant phase and there have been no operating losses other than the ordinary carrying cost of any agricultural operation in the off season. Debtor is also pursuing financing and other transactions that will provide funding for the commencement of the 2025 crop preparation, which given the time sensitive nature, would not likely be available to a trustee.  Debtor is also negotiating potential DIP financing packages that would provide for the reinstatement of the Summit debt facilities that would benefit the estate by eliminating many of the penalty charges currently accruing.

16. There is also a reasonable likelihood of rehabilitation.  A debtor may be rehabilitated by a sale of its assets or a capital infusion.  The parties do not dispute that the rehabilitation of the Debtor will require a sale of its assets or some hybrid sale and recapitalization of the Debtor and Sugarloaf. The wine industry is in a transition that is been influenced by factors beyond the control of the Debtor and

the other parties of interest. The best outcome for the parties will be obtained by securing the counsel of qualified professionals and executing a mindful plan to dispose of assets or otherwise recapitalize the Debtor and Sugarloaf.

17. There has been no gross mismanagement of the estate. The Vineyard and Sugarloaf remain going concern businesses that are situated on extremely valuable real estate. The Debtor has been and is focused on maintaining the operations, while pursuing rehabilitation through a disposition or recapitalization. The pressures facing the wine industry only suggest that the focus of the disposition strategy should be on the potential for redevelopment of the real estate as a means to maximizing value for the estate. The inherent value of the real estate separate from the growing and wine making business provides a reasonable prospect for a successful rehabilitation.

18. There has been no unauthorized use of cash collateral substantially harmful to one or more creditors. The Debtor has essentially had no cash collateral that it could use. Reynoso has paid certain of the Debtor's ordinary expenses from his own property. Summit does not proffer any evidence that it has been substantially harmed by the unauthorized use of cash collateral.

19. There has been no unexcused failure to timely file or report. The Debtor's delay in filing operating reports, which essentially reflect little or no activity during the off season, was excused by the Debtor's then inability to retain experienced attorneys and accountants to prosecute the reorganization case. The Debtor's professionals are reviewing and reporting, and if retained, and if the

8

reorganization case is allowed to proceed will correct any deficiencies in the reporting.

20. Even assuming that cause existed to convert the case, conversion and the appointment of a trustee would not be in the best interest of creditors.

**B. CONVERSION WOULD BE CONTRARY TO THE INTERESTS OF CREDITORS AND OTHER INTERESTS OF THE ESTATE**

21. The Motion should be denied because the conversion of the case and the appointment of a trustee would not be in the interests of the creditors. First, the appointment of a trustee would impose substantial additional costs upon the estate without any commensurate benefit. *In re General Oil Distributors, Inc.*, 42 B.R. 402, 410 (Bankr. E.D.N.Y. 1984).

22. Second, the conversion of the case would likely create a competency gap given the specialized nature of the Debtor's business, its reliance on its relationship affiliates, and the legal and practical limitations on a Chapter 7 trustee's ability to operate a business pending a sale. The Chapter 7 trustee has no guaranteed source of funding to operate the business, and no practical relationships needed to operate the business pending sale. Moreover, a Chapter 7 trustee would have limited flexibility in pursuing a sale or recapitalization of the business because of its inability to pursue options outside the strict confines of the Chapter 7 rules requiring the expeditiously reducing the estate's assets to cash.

**C.** **UNUSUAL CIRCUMSTANCES EXIST SUCH THAT CONVERSION TO CHAPTER 7 UNDER 11 U.S.C. § 1112(B) WOULD NOT BE IN THE BEST INTERESTS OF CREDITORS OR THE ESTATE.**

23.   Under 11 U.S.C. §1112(B):

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
(i) for which there exists a reasonable justification for the act or omission; and
(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). "The Code does not define 'unusual circumstances,' but the phrase 'contemplates conditions that are not common in most chapter 11 cases.'" *In re Ryan 1000, LLC*, 2021 Bankr. LEXIS 1776, at *37-38.

24.   The Court should find that these unusual circumstances exist in this case. The unusual circumstances here include that the Debtor is in a highly specialized industry with respect to which any trustee appointed is unlikely to have any substantial experience. In addition, the Debtor is dependent upon its relationship with a number of affiliates over which any trustee would have no control and would likely have an antagonistic relationship. Finally, this case needs to be coordinated with Sugarloaf, an affiliate over which the trustee would have no control.

10

## III. Conclusion

25. The estate and the estate of an affiliate include assets that fully provide for the claims of all secured creditors and promise a substantial return to unsecured creditors, if managed appropriately. The Debtor has or is retaining professionals that can successfully manage Chapter 11 to a prompt and successful conclusion. As such, conversion of the case to Chapter 7 would not be appropriate.

Dated: January 13, 2025                                REYNOSO VINEYARDS, INC/

                                                       By: /s/ Paul M. Bauch
                                                           One of Its Attorneys

Paul M. Bauch (ARDC #6196619)
BAUCH & MICHAELS, LLC
53 W. Jackson Blvd., Suite 1115
Chicago, Illinois 60604
(312) 588-5000 Tel.
pbauch@bmlawllc.com