# United States Bankruptcy Court, Northern District of Illinois

| JUDGE | Deborah L. Thorne | **Case No.** | 24-15572 |
|---|---|---|---|
| **DATE** | January 17, 2025 | **Adversary No.** | |
| **CASE TITLE** | In re Reynoso Vineyards, Inc. | | |
| **TITLE OF ORDER** | Order Directing the Office of the United States Trustee to Appoint a Chapter 11 Trustee | | |

### STATEMENT

This matter comes to be heard on the Motion of Summit State Bank for the Entry of an Order Converting or Dismissing the above-captioned case (the "Motion"). (Dkt. No. 43). The Motion was joined by other creditors (the "joining parties"), including James Gusich, Keith Daubenspeck and Poppy Bank. (Dkt. Nos. 50, 55, and 58). The court set the Motion for hearing on January 16, 2025, so that it could hear testimony and determine whether the relief sought was in the best interest of the creditors of this estate. The Movant and the joining parties appeared on January 16, 2025, and presented the court with a proposed order which they asserted resolved the Motion (the "Proposed Order").

The Proposed Order set forth a very aggressive calendar of deadlines by which the Debtor would be required to file required documents and certain motions (called "Milestones"); to provide information to the Movant and the joining parties; and to sell the Debtor's property, which mainly consists of a vineyard located in Cloverdale, California (the "Property"). The Debtor's schedules state the property has a value of $23,800,000. (Dkt. No. 19). The court heard the arguments of counsel supporting the Proposed Order, as well arguments of the United States Trustee, who was opposed. Neither the Debtor nor any of the other parties presented any evidence, although the Debtor's principal Joseph Reynoso was present in the courtroom.[1]

As explained in this order, the Office of the United States Trustee is directed to appoint a chapter 11 trustee under 11 U.S.C. §§ 1104(a) and 1112(b)(1).

### FACTS RELEVANT TO THE COURT'S DECISION

Based on a review of the docket, and statements by counsel in support of the Proposed Order, the court has determined the following:

---

[1] After the court indicated that it intended to enter this order, counsel for the Debtor asked to put Mr. Reynoso on. The court denied this request.

- The Debtor filed a voluntary petition on October 18, 2024, seeking protection under chapter 11 of Title 11 of the United States Code. (Dkt. No. 1).
- The Debtor did not file any schedules until November 8, 2024. (Dkt. No. 19).
- The Debtor did not file a motion to employ counsel until after a motion by the United States Trustee to compel proposed counsel to file a disclosure under Fed.R.Bankr.Pro. 2014. (Dkt. Nos. 27 and 30). To date, the court has not entered an order authorizing the employment of counsel, although a motion to employ counsel has been noticed for January 22, 2025.
- Joseph Reynoso has a significant interest in three affiliated entities, Sugarloaf Ventures LP (currently a chapter 11 debtor in the pending case before the United States Bankruptcy Court for the Northern District of California, Case No. 24-10673); Crescere Wines, a non-debtor entity that produces and sells premium wines; and Agathon Holdings, a non-debtor entity that acts as a distributor, delivering grapes to Sugarloaf and Crescere Wines.
- Debtor is owed 90-day receivables in the amount of $796,000, which it believes are collectable, as well as additional 90-day receivables in the amount of $1,999,205, which it believes are uncollectable. These are owed by the affiliated non-debtor entities Crescere and Agathon Holdings.
- Joseph Reynoso, the principal or at least the person in control of the affiliates, controls the sale of inventory held by each and in turn controls the repayment of receivables held by the Debtor.
- The Debtor's schedules list a secured claim held by Summit State Bank in the amount of $9,200,000, another secured claim held by Keith Daubenspeck in the amount of $1,600,000, and a secured claim held by William Holtz Trust in the amount of $300,000. Poppy Bank asserts a secured claim of approximately $12,000,000, which may be cross-collateralized against the Debtor and Sugarloaf Ventures LP, a related entity with its own chapter 11 case pending in the Bankruptcy Court for the Northern District of California.
- No motion seeking permission to use any lender's cash collateral has been filed and only one Monthly Operating Report ("MOR") has been filed, so neither the court nor creditors have any idea whether cash is being used—and if so, for what purpose. Counsel for the Debtor, furthermore, represented that the filed MOR was not accurate and will be amended.
- Five houses are located on the Property, including one in which Joseph Reynoso resides, but no tenant is paying rent to the Debtor.
- Expenses for the upcoming season will soon accrue, including fertilizer for vines and crop insurance.
- Notice of the Motion to Convert or Dismiss was provided to many creditors. But the Proposed Order, which was tendered in court on January 16, was not provided even to the Office of the United States Trustee until midway through the hearing. No creditors were provided notice of the Proposed Order, which, if entered, would dramatically influence the outcome of this case.

**DISCUSSION**

Although the Movant and the joinder parties presented an agreed order which they propose resolves the Motion to Dismiss or Convert, after review and the consideration of the arguments and statements of counsel, the court finds that the appointment of a chapter 11 trustee under section

2

1112(b)(1) is in the best interest of this estate.   In determining the best interests of creditors, the court has broad discretion and may take judicial notice of its docket.  Section 105 of the Code provides the court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]."  11 U.S.C. § 105(a).[2]  These inherent powers also "impose a duty on [bankruptcy courts] to ensure that the provisions of the Code are carried out and to prevent an abuse of process." *MBNA Amer. Bank v. Panem (In re Panem)*, 352 B.R. 269, 278 (Bankr. D. Colorado 2006). Especially in a case where not all parties are informed or consent to a proposed order, this duty requires the court to review an order to ensure that it is in the best interests of all creditors and the estate.

Immediate conversion or dismissal would not serve the best interest of creditors in this case, and neither would the aggressive schedule agreed to by the Movant and joinder parties. The Proposed Order, although it sets aggressive benchmarks, leaves Joseph Reynoso in control of this Debtor and in control of the related entities which may hold conflicting positions with the Debtor.  It also fails to take into consideration other assets that an independent fiduciary might determine would bring value into the estate, such as actions to avoid preferences and fraudulent conveyances.  The Proposed Order, furthermore, reflects an agreement between only the Debtor and the joinder creditors, rather than the consent of all parties of interest.

When cause has been established and the court considers a motion to convert or dismiss, the court must determine which course "is in the best interests of creditors and the estate." § 1112(b)(1).  As an alternative to outright conversion or dismissal, and only if it would be "in the best interests of creditors and the estate," the Code allows the court instead to allow the case to proceed under chapter 11 if it also orders the appointment of a trustee or examiner pursuant to section 1104(a). *Id.*  This provision allows the court to exercise some discretion in situations where "cause" has been established under section 1112, but the best interests of creditors would not be served by immediate dismissal or conversion.[3]  The "best interests of creditors" standard is more flexible than the burden of proof required by a motion to appoint a trustee pursuant to section 1104(a), under which the United States Trustee bears a burden of proof by "clear and convincing evidence."  § 1104(a); *In re Spiegel*, 662 B.R. 666, 683-84 (Bankr. N.D. Ill. 2024); *see also In re LHC,* 497 B.R. 281, 293 (Bankr. N.D. Ill. 2013).

---

[2] The court has abbreviated references to the Code in the remainder of this order.

[3] This is consistent with best interests of creditors analysis pre- and post-BAPCPA.  Traditionally, to determine what was in the best interests of creditors, bankruptcy courts "balance[d] equities" and determined whether the benefits of liquidation outweighed the benefits of continuing a business's operation while it reorganized. *See, e.g., In re Jartran, Inc.*, 71 B.R. 938, 943 (Bankr. N.D. Ill. 1987), *aff'd*, 87 B.R. 525 (N.D. Ill. 1988), *aff'd*, 886 F.2d 859 (7th Cir. 1989).

The option to appoint a trustee may be especially preferable to conversion or dismissal when facts are not available to establish whether creditors are best served by dismissal, liquidation, or the continuing operation of the business.  When considering whether or not to appoint a trustee in lieu of either dismissal or conversion, courts should consider the following factors.

A.  Feasibility

Is the debtor a viable financial operation with income?  Do its past and present performance metrics suggest it can rehabilitate?  *Prods. Intern.*, 395 B.R. at 111-12; *In re Morningstar Marketplace, Ltd.*, 544 B.R. 297, 304-05 (Bankr. M.D. Penn. 2016); *In re LHC*, 497 B.R. at 293.

The Property appears to have significant value, and a distress sale would reap considerably less value for creditors.  The Debtor is also owed significant sums from its affiliates, whom the Debtor's principal also controls.  These affiliates must sell inventory to generate money for the Debtor, but it appears the proceeds may themselves be subject to multiple liens.  Because of the lack of operating reports and disclosures of past and present performance, the court does not know whether it is feasible to collect the accounts.  It is also unknown whether, without these funds, the debtor can take the steps necessary to prepare the Property for sale.  It is also unclear whether and how the debtor can pay administrative expenses.   A chapter 11 trustee is warranted under this factor because a trustee, as an independent fiduciary, will wade into this morass and find a way through.  The trustee can investigate what is owed to the Debtor, expedite the collection of accounts receivable from the Debtor's affiliates, and obtain authorization to use cash collateral that is generated.  The chapter 11 trustee can also maintain the going-concern value of the Property as he or she determines whether a recommendation to sell as development land or as a vineyard is advisable and in the best interest of creditors.

B.  Cost-Benefit Analysis

Do the benefits of appointing a trustee outweigh the cost of employing one? Will a trustee bring more value into the estate than it costs, for example by recovering preferential or fraudulent transfers? *Morningstar Marketplace,* 544 B.R. at 305; *In re LHC*, 497 B.R. at 293; *Prods. Intern.*, 395 B.R. at 112.

The Debtor's business model involves several affiliates, controlled by the Debtor's principal, who owe the Debtor large sums of money.  The Debtor's principal is a guarantor on the three largest secured claims.  The joinder parties and the Debtor also represented that many of the Debtor's creditors are friends and family.  Given these facts, the Debtor's lack of disclosure, and the potential for self-interested conduct, this factor weighs heavily in favor of appointing a chapter 11 trustee, who can assist the parties

4

in quantifying the debtor's financial affairs, discover whether there were any preferential or fraudulent transfers, and litigate recoveries of such transfers.

C.   Confidence in the Debtor

Is there a lack of confidence in the debtor?  Is the debtor trustworthy?  *In re LHC*, 497 B.R. at 293.

The Debtor's failure to provide timely and accurate schedules (for example, failing to schedule Poppy's $12 million claim), failure to file MORs, and failure to administer the case speedily led one secured creditor to file the instant Motion and induced several other creditors to file joinders in support. Counsel for creditors did not state that the Proposed Order had restored their confidence in the debtor. Quite the opposite—the Proposed Order has a default provision that converts the case to a case under Chapter 7 upon failure to comply with a single milestone in the proposed order.  (Dkt. No. 72 at 2, ¶ 3). This lack of confidence weighs heavily in favor appointing a chapter 11 trustee, who will use his or her experience to move the case forward while also drawing on the specialized expertise of the Debtor.

D.   Ease or Speed of Administration

Is appointment of a trustee likely to improve the administration of the case and move it forward?

To date the Debtor has failed to move this case forward, evidenced by the many missteps chronicled in this order.  The failure to retain counsel is illustrative.  The case was filed in mid-October, and the first lawyer to appear was Mr. Greco.  When the court questioned him about his experience handling chapter 11 cases, he promised, several times, that another lawyer would assist him.  It was not until early in January—and not until *after* the motion to convert or dismiss was filed—that another lawyer appeared.  Yet neither lawyer has been retained.  The delays are inexcusable, especially in a case where speed is of the essence.  A chapter 11 trustee will ensure that the case moves forward in a proactive manner, preventing the dissipation of assets and protecting the interests of all creditors.

In conclusion, the existence of valuable real estate and significant accounts receivable, the potential for conflicts, the lack of confidence in the debtor, and the need for expedition all counsel the appointment of a chapter 11 trustee instead of conversion or dismissal.  It appears that the Property is of significant value and there is a possibility that a sale or other reorganization may produce significant payment to secured and possibly to unsecured creditors.  A chapter 11 trustee will have the ability to move this case forward, in the event he or she believes this was possible. Most importantly, a chapter 11 trustee will be able to understand—and explain to the court and creditors—the connections between the Debtor and its affiliates and determine whether there are causes of action that should be pursued to

provide additional benefit to the estate.  A chapter 11 trustee will also have the ability and the duty to collect other potential assets of the estate, including receivables for grapes, wine, and rent.

Because chapter 11 cases require debtors to provide honest and timely views of assets and liabilities and because this has not occurred in this case, the case clearly can be better administered by an unrelated third party.  For this reason, neither conversion nor dismissal are appropriate, and it is in the best interest of the estate for the court to direct the Office of the United States Trustee to appoint a chapter 11 trustee.

ENTER:

Dated: January 17, 2025

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge

6